## GEORGE LAWRENCE *v.* THE STATE.

HOMICIDE — CHARGE OF THE COURT in a trial for felony is defective if it omits to apply the law governing every phase of case indicated by the evidence. The omission to apply the law to a single exculpatory theory raised by the evidence is cause for a reversal of the conviction.

APPEAL from the District Court of Waller. Tried below before the Hon. W. H. BURKHART.

The indictment charged the appellant with the murder, in Waller county, on the 1st day of January, 1881, of Thomas Ray, Sr. He was tried, found guilty of murder of the second degree, and his punishment assessed at five years in the penitentiary.

It appears, according to the testimony of the witness Snooks, that, on the night of January 1, 1881, David Ray, son of the deceased, and Alf. Lawrence, brother of the defendant, were engaged in a rough and tumble fight in Fields' store, in Waller county. The deceased came into the store and started towards the combatants, when the defendant, who was standing near the west counter, started at the deceased and pushed him towards the east counter. The deceased recovered himself and pushed

defendant across the room and against the west counter, when the latter raised a pistol and fired, the bullet striking deceased in the head and killing him instantly. Defendant fled, and witness did not know where he went to. The deceased was a stout, robust man of some fifty years of age. The cross-examination developed nothing of importance.

The testimony of the remaining witnesses for the State was substantially the same as that of the witness Snooks. None of them, however, saw the deceased when he entered the store, and they noticed him for the first time when he and the defendant were clinched, the former pushing the deceased towards the east counter. Otherwise their narratives corroborate Snooks in every particular.

J. M. Pinkney, for the defense, testified that, about an hour after dark, himself and the deceased went to Fields' store, and as they stepped in the door they saw David Ray and Alf. Lawrence scuffling on the floor. The deceased motioned the witness to one side and made a rush at defendant, and crowded him over against the west counter, and while he was in that position the witness saw a pistol raised and fired near the head of the deceased, who stepped back and fell, and the witness saw no more of the defendant after the pistol fired. The witness saw no demonstrations made by the defendant. He was taking no part in the fight between his brother and David Ray. The deceased and his four sons were attending court that day, and G. W. Snooks and A. Hawkins were with them. They had arms. The deceased was prosecuting one Wm. Matchett, with whom he had had a difficulty. The witness went on to explain his means of knowing that the Rays were armed. He stated that the deceased was a much heavier and stouter man than defendant.

Cross-examined by the State, he testified that the de-

ceased had no arms or knife in his hands when he and defendant clinched — thinks that if he had, he, the witness, would have seen them. When the pistol fired, the deceased had his hand on the upper part of the defendant's breast, near the shoulder, and had pushed him backwards, inclining over the counter. The pistol-hand appeared to the witness restrained, as though some one were holding it. The pistol was within an inch and a half of the deceased's head, when fired. The defendant had borne the reputation of a quiet, peaceable citizen.

J. L. Boulware, deputy sheriff, for the defense, testified that the first he saw of the difficulty between deceased and defendant they were clinched. The defendant pushed the deceased towards the east counter, or the deceased pulled the defendant in that direction, and then pushed him over against the west counter, when the witness saw a pistol raised and fired near the deceased's head. The deceased fell, and defendant fled, since which time witness saw him no more until the 5th day of January, when he voluntarily surrendered. There were no wounds on the head or neck of the defendant up to the time that he and deceased clinched, and if he had been cut in the house after the firing of the fatal shot, the witness would have known it. This witness' description of other occurrences in the store-house agreed with those of the previous witnesses, except that he stated that about a half minute or longer before the deceased came into the store, the defendant struck David Ray, who was engaged in a fight with his brother, twice over the head with a pistol. He testified also to the defendant's reputation as a quiet and peaceable citizen.

E. Lacy, the defendant's brother-in-law, testified for the defense that he lived about four miles from Fields' store. At about 8 o'clock on the night the deceased was killed, the defendant came to witness' house, suffering from two cuts, one on the back and one on the neck, the

latter barely penetrating the skin. He had a handkerchief, which was saturated with blood, tied around his neck. The witness washed and dressed his wounds, one of which was still bleeding, and then rode rapidly to the store, to see about the killing and about Alf. Lawrence. He returned within an hour and a half and he and the defendant went to the woods and remained all night. The witness discovered next day that the defendant had been cut near the top and on the right side of the head. The witness identified an overcoat exhibited as the one worn by the defendant on the night of the killing. It had a cut through the back of the collar, and one on the right arm.

H. McKaskell corroborated the last witness as to the wounds on the defendant, and the cuts on the coat.

Renfro, for the defense, testified that he was near but not in the house at the time of the killing. The deceased, his four sons, with Snooks and Hawkins, went to the store together. During the day the deceased and Matchett had a difficulty. Snooks and Hawkins showed a disposition to "crowd on" Matchett, to such an extent that the witness concluded that the parties named had an understanding to act together in any difficulty into which either might get.

The State, in rebuttal, introduced Ambrose Hawkins, who testified that when the deceased was shot, he, witness, was standing inside the house, near the north door and the end of the east counter. Alf. Lawrence and Dave Ray were fighting, when the defendant came in and asked, "what are you doing, Dave?" Tom Ray said, "they are fighting." The deceased then started towards them, and the defendant caught hold of him and shoved him back against the east counter, drew his pistol with his right hand, and shot him. When the deceased entered and the defendant advanced, the latter said to deceased, "God d—n you, do you want some of it?"

Crossed by the defense, the witness said that he did not

see J. M. Pinkney near the door. He denied that after the shooting he said in the presence of the two Pinkneys and Boulware that he would "have the defendant's heart's blood, if he had to follow him to the jumping off place," but did say "we will have revenge." Denied going armed for the defendant or carrying arms with the Ray boys. He had a gun when he came into Hempstead on the Monday before this trial, and carried it because he had heard there were parties in Waller county who had threatened to kill him and Snooks. He testified that he had no ill feeling towards the defendant.

The defense recalled J. M. and T. D. Pinkney and Boulware, each of whom imputed to the witness Hawkins the language which, on his (Hawkins') cross-examination, he denied. J. M. Pinkney stated that Hawkins was not standing near the north end of the east counter as he had stated; that he, witness, was standing there himself, and Hawkins could not have occupied that position without touching witness and being seen by him. The deceased did not ask Dave Ray what he was doing. Tom Ray did not say "they are fighting;" the defendant did not ask the deceased "if he wanted a hand in it;" nor push the deceased against the east counter and there shoot him, but was by the deceased pushed against the west counter, where the deceased was shot.

*Boone & Griffin,* and *H. M. Browne,* for the appellant.

*H. Chilton,* Assistant Attorney General, for the State.

HURT, J.   Appellant was convicted of murder of the second degree, and his punishment fixed at confinement in the penitentiary for the term of five years.

The statement of facts presents three theories in regard to the homicide.

1st. That the *defendant* brought on the conflict by assaulting the deceased, and while engaged in the fight

drew his pistol, and killed the deceased, and is therefore guilty of murder.

2d. That *deceased* brought on the conflict, was the aggressor, and the life of the defendant being in danger, he killed the deceased, and is therefore guilty of no crime.

3d. That the *defendant* was the aggressor, but that the aggression was not made with intent to bring on a conflict, and for the purpose of killing, and that a serious personal conflict ensued in which great injury was inflicted by the deceased by means of weapons or other instruments of violence, or by means of great superiority of personal strength, and therefore the killing was not murder but manslaughter.

The charge of the court applied to the facts the law of murder of the first and second degrees, also that of manslaughter, except the 2d subdivision of art. 597. Adequate cause being the subject of said article, the said subdivision provides that: "A serious personal conflict in which great injury is inflicted by the person killed, by means of weapons or other instruments of violence, or by means of great superiority of personal strength, although the person guilty of the homicide were the aggressor, provided such aggression was not made with intent to bring on a conflict and for the purpose of killing."

As above stated, the evidence clearly indicates these three different theories. The court should have applied the law to each. This was not done. There was no attempt to apply it to the third proposition.

The other grounds assigned (and there are a great many) will not be noticed, as there is not the least danger of their repetition.

For the error of the court in not giving in charge all of the law applicable to the facts of the case, the judgment is reversed and the cause remanded.

*Reversed and remanded.*